Lawrence S. Lustberg, Esq.
Caroline E. Oks, Esq. (D.D.C. Bar No. 1045607)
Ruth O'Herron, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
(973) 596-4500
llustberg@gibbonslaw.com
coks@gibbonslaw.com
roherron@gibbonslaw.com

*Attorneys for Plaintiff James Vincent Wilgus*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

JAMES VINCENT WILGUS,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF STATE, JOSEPH R. BIDEN, in his official capacity as President of the United States, ANTONY J. BLINKEN, in his official capacity as United States Secretary of State, RENA BITTER, in her official capacity as Assistant Secretary for Consular Affairs, ROGER D. CARSTENS, in his official capacity as Special Presidential Envoy for Hostage Affairs at the United States Department of State, STEVEN GILLEN, in his official capacity as Deputy Special Presidential Envoy for Hostage Affairs at the United States Department of State, LYNNE M. TRACY, in her official capacity as Ambassador of the United States to the Russian Federation, JOHN DOES ##1–50, in their official capacities as officers responsible for reviewing the cases of Americans detained abroad,

Defendants.

Civil Action No. 24-1384

**COMPLAINT FOR DECLARATORY AND MANDAMUS RELIEF**

Plaintiff James Vincent Wilgus, by and through his attorneys, Gibbons P.C., for his Complaint alleges as follows:

## INTRODUCTION

1. This lawsuit is about the United States Government's illegal neglect of its citizen, Plaintiff James Vincent Wilgus, a peaceful and law-abiding musician who was arrested in Russia in 2016 and is serving a twelve-and-a-half-year sentence of hard labor in a penal colony in Mordovia, Russia, known as IK-17, after being convicted on false charges based on a forced confession and fabricated evidence, in a closed courtroom. Like the other penal colonies in Mordovia where Brittney Griner, Trevor Reed, and Paul Whelan have been imprisoned, IK-17 was built as part of the gulag system of the Soviet Era and designed to break the human spirit. Plaintiff is forced to work long days in a sweatshop assembling clothing in hazardous conditions, denied essential healthcare, subjected to violence by other inmates and prison authorities with impunity, and regularly sent to solitary confinement, where he is locked in a room only as wide as his arm span and forced to stand or sit on a bench for sixteen hours a day. Plaintiff's conditions, and his mental and physical health, are deteriorating with each passing day.

2. This case is based upon two statutes requiring Defendants to take action when an American citizen is detained by a foreign government: an 1868 law known as the Hostage Act and a similar but more robust law enacted in 2020, the Robert Levinson Hostage Recovery and Hostage-Taking Accountability Act (the "Levinson Act"). The Levinson Act directs Defendants to "expeditiously" make a determination as to whether persons in Plaintiff's circumstances, including Plaintiff himself, are being unlawfully or wrongfully detained, here by Russia. It also requires that, once this determination is made, Defendants must seek his release and report to Congress about his circumstances and their efforts to secure his release. While this case is brought only on behalf of

Plaintiff, there are dozens of other Americans unlawfully or wrongfully detained abroad whom Defendants have likewise neglected, including but not limited to Plaintiff's fellow prisoner Thomas Stwalley.

3. As an American detained at penal colony IK-17, Plaintiff's life is at risk. In addition to the inhumane, sometimes torturous conditions to which he is subjected by the Russian authorities every day, other inmates abuse and threaten Plaintiff with impunity and even, at times, with encouragement from the prison authorities. The risk to Plaintiff's life has increased in recent months, as his health deteriorates following a stroke in August 2022, and as hostility to Americans and to American foreign policy grows among the Russian inmates as well as inmates from other countries who are also housed at IK-17.

4. Defendants publicly condemn Russia's widespread practice of unlawfully detaining Americans to advance its political interests, and the President has declared a national emergency to deal with the threat posed by the wrongful detention of United States nationals abroad. Yet, more than three years after the Levinson Act was enacted, and despite relentless efforts from Plaintiff's advocates to remind Defendants of the clear evidence that Plaintiff is "unlawfully or wrongfully detained" within the meaning of the Act, Defendants still have not even made the initial determination—let alone the urgently necessary efforts to bring him home.

5. Accordingly, Plaintiff respectfully requests an order from this Court compelling Defendants to review the circumstances of his detention as required by the Hostage Act and Levinson Act, and to make a prompt determination as to whether "there is credible information that [he is] being detained unlawfully or wrongfully" as required by the latter, 22 U.S.C. § 1741(a).

## THE PARTIES

6. Plaintiff James Vincent Wilgus is a citizen of the United States, born and raised in New Jersey, who has been unlawfully and wrongfully detained by Russian authorities since November 7, 2016. He is imprisoned at a penal colony, known as IK-17, in Mordovia, Russia, a remote region 300 miles East of Moscow, containing 14 penal colonies. There, he is forced to work in a polluted factory assembling clothing in hazardous conditions, denied essential healthcare, subjected to violence by other inmates and Russian prison authorities, and regularly sent to solitary confinement.

7. Defendant Department of State is a cabinet-level department of the federal government responsible for implementing foreign policy, including the protection of American citizens abroad. It is an "agency" within the meaning of 5 U.S.C. § 701(b)(1).

8. Defendant Joseph R. Biden is the President of the United States. He is sued in his official capacity.

9. Defendant Antony J. Blinken is the United States Secretary of State. He is sued in his official capacity.

10. Defendant Rena Bitter is the Assistant Secretary for Consular Affairs at the United States Department of State. She is sued in her official capacity.

11. Defendant Roger D. Carstens is the Special Presidential Envoy for Hostage Affairs at the United States Department of State. He is sued in his official capacity.

12. Defendant Steven Gillen is Deputy Special Presidential Envoy for Hostage Affairs at the United States Department of State. He is sued in his official capacity.

13. Defendant Lynne M. Tracy is the Ambassador of the United States to the Russian Federation. She is sued in her official capacity.

14. Defendants John Does ##1–50 are other officials employed by the President or the Department of State who are responsible for reviewing the cases of United States nationals detained abroad to determine if there is credible information that they are being detained unlawfully or wrongfully. Their identities are not publicly disclosed by the Department of State. They are sued in their official capacities.

**<u>JURISDICTION AND VENUE</u>**

15. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Mandamus and Venue Act, 28 U.S.C. § 1361. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

16. The Court has authority to grant the requested declaratory and mandamus relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; the APA, 5 U.S.C. §§ 702 and 706; the Mandamus and Venue Act, 28 U.S.C. § 1361; the All Writs Act, 28 U.S.C. § 1651(a); Rules 57 and 65 of the Federal Rules of Civil Procedure; and the Court's inherent equitable powers.

17. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including Defendants' failure to comply with the Congressional mandate to "expeditiously" review Plaintiff's case and make a determination under the Levinson Act, 22 U.S.C. 1741(a). Moreover, Defendants Biden, Blinken, Bitters, Carstens, Gillen, and others identified as John Does, in their official capacities, reside in this District. 28 U.S.C. § 1391(e)(1).

**<u>FACTUAL ALLEGATIONS</u>**

18. Laws requiring Defendants to act when an American is detained by a foreign government are codified in Title 22 of the U.S. Code, Chapter 23. The first, set forth in 22 U.S.C. § 1732, is an 1868 law sometimes referred to as the "Hostage Act." *See Am. Int'l Grp., Inc. v.*

*Islamic Republic of Iran*, 657 F.2d 430, 450 (D.C. Cir. 1981) (discussing this statute as the "Hostage Act"). The second, set forth in 22 U.S.C. § 1741 *et seq.*, is the Levinson Act, which was signed into law on December 27, 2020. *See* Pub. L. 116-260, div. FF, title III, §§ 302–08. As set forth in detail below, Defendants have violated their obligations to Plaintiff under both of these laws, causing him harm.[1]

**A. Defendants Have Violated Their Legal Obligations to Plaintiff Under the Hostage Act.**

19. The Hostage Act mandates that

> [w]henever it is made known to the President that any citizen of the United States has been unjustly deprived of his liberty by or under the authority of any foreign government, it shall be the duty of the President forthwith to demand of that government the reasons of such imprisonment; and if it appears to be wrongful and in violation of the rights of American citizenship, the President shall forthwith demand the release of such citizen, and if the release so demanded is unreasonably delayed or refused, the President shall use such means, not amounting to acts of war and not otherwise prohibited by law, as he may think necessary and proper to obtain or effectuate the release; and all the facts and proceedings relative thereto shall as soon as practicable be communicated by the President to Congress.

22 U.S.C. § 1732.

20. This "congressional mandate" was in effect at the time of Plaintiff's arrest, more than seven years ago. *Worthy v. Herter*, 270 F.2d 905, 910 & n.2 (D.C. Cir. 1959). As the text of the statute makes clear, "the Hostage Act requires the Executive to undertake a meaningful inquiry into the circumstances of the detention" of any United States citizen imprisoned abroad, "in order

---

[1] Beyond the statutory obligations imposed upon the Executive Branch by the Hostage and Levinson Acts, several executive orders addressing Plaintiff's situation have also been violated by Defendants' inaction described in this Complaint. These include President Obama's Executive Order 13698 of June 24, 2015, which required, *inter alia*, that Defendants undertake diplomatic engagements in the cases of U.S. nationals unlawfully or wrongfully detained abroad, and President Biden's Executive Order 14078 of July 19, 2022, which declared a national emergency to deal with the threat posed by wrongful detention of United States nationals abroad, and ordered the Secretary of State to impose sanctions on officials of foreign governments who are involved in wrongful. *See* Exec. Order No. 13698 of Jun. 24, 2015: Hostage Recovery Activities, 80 Fed. Reg. 37131, https://www.federalregister.gov/documents/2015/06/29/2015-16122/hostage-recovery-activities; Exec. Order No. 14078 of Jul. 19, 2022: Bolstering Efforts To Bring Hostages and Wrongfully Detained United States Nationals Home, 87 Fed. Reg. 43389, https://www.federalregister.gov/documents/2022/07/21/2022-15743/bolstering-efforts-to-bring-hostages-and-wrongfully-detained-united-states-nationals-home.

to determine whether the citizen is unjustly deprived of liberty." *Flynn v. Shultz*, 748 F.2d 1186, 1196 (7th Cir. 1984); *see also Redpath v. Kissinger*, 415 F.Supp. 566, 568 (W.D.Tex.), *affirmed*, 545 F.2d 167 (5th Cir.1976).

21. Although the Hostage Act does not specifically provide for judicial review of the Executive's determination as to whether a particular individual is "unjustly" detained, or what actions are appropriate to effectuate the citizen's release, courts are empowered to enforce the duty of inquiry that the Hostage Act imposes on the President, and to review "the extent of the inquiry" to assess whether the President's examination of the detainee's circumstances was sufficient to comply with the Hostage Act. *See Flynn*, 748 F.2d at 1195–96.

22. Defendants have violated the Hostage Act by failing to undertake a meaningful inquiry into the circumstances of Plaintiff's detention in Russia, to demand his release, to use all necessary and proper means to effectuate his release, and to communicate to Congress about his case.

**B. The Levinson Act Requires Defendants to "Expeditiously" Review Plaintiff's Case, Make a Determination as to Whether There is Credible Information He is Unlawfully or Wrongfully Detained, and Report to Congress on Their Efforts to Bring Him Home.**

23. The Levinson Act, 22 U.S.C. § 1741 *et seq.*, imposes a number of mandatory duties on State Department officials, to be fulfilled on an expedited basis, none of which have been undertaken or performed with regard to Plaintiff, more than three years after the statute was enacted.

24. Under the Levinson Act, the Secretary of State "shall review, as expeditiously as possible, the cases of United States nationals detained abroad to determine if there is credible information that they are being detained unlawfully or wrongfully." 22 U.S.C. § 1741(a). This initial determination under Section 1741(a)—hereinafter referred to as a "Levinson Act

Determination" and discussed in greater detail in section D, below—is essential because it triggers all of the other obligations imposed on Defendants by the Levinson Act.

25. If the Secretary makes a determination "based on the totality of the circumstances, that there is credible information that the detention of [the] United States national abroad is unlawful or wrongful," the Levinson Act requires the Secretary to: (a) "expeditiously transfer responsibility for such case from the Bureau of Consular Affairs" led by Defendant Bitters "to the Special Presidential Envoy for Hostage Affairs" led by Defendant Carstens; (b) "not later than 14 days after such determination, notify the Committee on Foreign Relations of the Senate, the Select Committee on Intelligence of the Senate, the Committee on Foreign Affairs of the House of Representatives, and the Permanent Select Committee on Intelligence of the House of Representatives of such determination" and (c) "provide such committees with a summary of the facts that led to such determination." 22 U.S.C. § 1741(b).

26. The Levinson Act also requires the Secretary to submit a detailed, unclassified annual report to these congressional committees (the "Annual Report"). 22 U.S.C. §§ 1741(c). The Annual Report must contain highly specific information regarding each of the United States nationals about whom the Secretary has determined "there is credible information of unlawful or wrongful detention abroad." 22 U.S.C. § 1741(c)(1)(A). It must include "current estimates of the number of individuals so detained, as well as relevant information about particular cases," including each individual's name, basic facts about his case, a summary of the information demonstrating that he "may be detained unlawfully or wrongfully," a description of the specific legal and diplomatic efforts taken on behalf of that individual in that year, and a description of "intended next steps." 22 U.S.C. § 1741(c)(2).

27. Further, the Levinson Act requires the Secretary, "[n]ot later than 180 days after December 27, 2020," or by June 2021, to "provide resource guidance in writing for government officials and families of unjustly or wrongfully detained individuals." 22 U.S.C. § 1741(d).[2]

28. Finally, the Levinson Act codifies the establishment of executive offices responsible for aiding Americans unlawfully or wrongfully detained abroad and their families, including the Office of the Special Presidential Envoy for Hostage Affairs and the Hostage Recovery Fusion Cell, and describes the specific duties of those offices and of certain officers within them. 22 U.S.C. §§ 1741a–c.

29. Congress thus made clear in the Levinson Act that the Executive Branch is required to act without delay to secure the release of every American unlawfully or wrongfully detained abroad. It also demands greater accountability and transparency from the Executive Branch than was the case under the Hostage Act, requiring a detailed annual report about every American who "may be detained unlawfully or wrongfully." 22 U.S.C. § 1741(c)(2).

30. Defendants have violated their obligations to Plaintiff under the Levinson Act by refusing to make the initial Levinson Act Determination in his case, required by 22 U.S.C. § 1741(a), and they have accordingly unlawfully shielded themselves from the numerous other obligations imposed by subsequent sections of the Act which are triggered only once that Determination is made.

[2] Resource guidance for families that seems to satisfy the requirements of 22 U.S.C. § 1741(d) is available on the State Department's website. *See* U.S. Dep't of State, Office of the Special Presidential Envoy for Hostage Affairs, *Resources for Families of Wrongful Detainees*, https://www.state.gov/resources-for-families-of-wrongful-detainees/ (last visited Apr. 1, 2024.)

**C. Defendants Still Have Not Made a Levinson Act Determination in Plaintiff's Case, While at the Same Time Acting Quickly to Make a Determination in Other Russia Detainees' Cases and to Bring Them Home.**

31. As set forth in detail below, Plaintiff has been unlawfully and wrongfully detained in Russia for more than seven years, in notoriously inhumane conditions at a remote labor camp often in solitary confinement based on fabricated charges.[3] Defendants or their predecessor officials have been aware of his detention since the day of his arrest on November 7, 2016.

32. For more than seven years, Plaintiff and his many advocates in the United States have been persistent and unrelenting in their efforts to draw Defendants' attention to Plaintiff's dire circumstances and the unlawful, wrongful, and inhumane nature of his detention.[4]

33. When the Levinson Act became law, Plaintiff had already been unlawfully and wrongfully detained for more than four years.

34. Plaintiff applauds Defendants' success in returning other wrongfully detained Americans home, including Brittney Griner and Trevor Reed. He is glad that others have been determined to be unlawfully or wrongfully detained such that Defendants are working to negotiate their release, including in the cases of Paul Whelan and Evan Gershkovich.

35. However, Plaintiff is also deserving of a Levinson Act Determination and the political action that will follow once he is designated unlawfully or wrongfully detained. Defendants' swift compliance with the Levinson Act with regard to a small number of American

[3] *See* Brett Forrest, *Russia's Grim 'Fashion Colony': Americans Describe Harsh Life in Remote Labor Camp*, Wall Street Journal (Jun. 18, 2023), https://www.wsj.com/articles/russias-grim-fashion-colony-americans-describe-harsh-life-in-remote-labor-camp-9324bb80.

[4] Among numerous other communications by Plaintiff's representatives to Defendants and their agents during the course of his detention, on April 29, 2024, Plaintiff's counsel sent a draft of this Complaint to Richard C. Visek, Acting Legal Adviser to the Department of State, requesting an opportunity to discuss the issues raised herein and to avoid litigation. As of the filing date of this Complaint, Plaintiff has not received any response to that correspondence.

detainees—while ignoring their obligations to Plaintiff, and to Congress with regard to Plaintiff—is unlawful, unreasonable, arbitrary, and capricious.

36. Brittney Griner was detained by Russian authorities on February 17, 2022. Defendants determined that she was wrongfully detained within the meaning of the Levinson Act only 75 days later, on May 3, 2022, while she was still in pre-trial detention. On July 7, 2022, she pleaded guilty to possession of cannabis oil. On August 4, 2022, she was sentenced to nine years in prison. In mid-November, she began to serve her sentence at penal colony IK-2 in Mordovia, which is neighboring and similar to penal colony IK-17, where Plaintiff is detained. On December 8, 2022, less than ten months after her arrest, Defendants successfully negotiated her release in a prisoner exchange for a notorious Russian arms dealer, Victor Bout.[5]

37. Trevor Reed was detained by Russian authorities on August 15, 2019. Originally in police custody for intoxication, he was convicted on false charges of assaulting police officers and on July 30, 2020, he was sentenced to nine years in prison. He served part of his sentence in Moscow, but in July 2021 he was transferred to penal colony IK-12 in Mordovia, near Plaintiff.[6]

---

[5] Caitlin Yilek, *Who is Viktor Bout? Russian arms dealer known as the "Merchant of Death" swapped for Brittney Griner*, CBS News (Dec. 8, 2022), https://www.cbsnews.com/news/viktor-bout-russia-arms-dealer-merchant-of-death-brittney-griner/.

[6] At some time between July 2021 and April 2022, Plaintiff met Mr. Reed in a prison hospital near their penal colonies in Mordovia. Upon his return to the United States, Mr. Reed told American news outlets that he believes Plaintiff is wrongfully detained, and that meeting Plaintiff made him aware that there are "a lot" more Americans wrongfully detained abroad than Defendants claim, especially in Russia. As Mr. Reed stated during a videotaped interview with a podcast in March 2023:

> I did see, when I was in the hospital at prison labor camp, . . . I did meet one other American, named James Wilgus. And, to be honest with you, I think he's probably also being wrongfully detained. And I've brought his name up also, like previously in the news media, but they didn't air it . . . which is kind of scary, because actually once I met him, I realized that, like, the number of like official hostages and wrongfully detained that the United States has on their big list, it's probably missing now, like a lot of Americans who are actually wrongfully detained but they haven't made it to that list yet. So, you know, the U.S. State Department definitely needs to take a closer look at that . . . especially in countries like . . . Russia, . . . any Americans who are imprisoned there, you need to take a look at that case and go, like, is something not right here? Because that's what they do there. They're basically a gang who has nuclear weapons . . .

Meanwhile, on or before February 3, 2021, Defendants determined that he was wrongfully detained. On April 27, 2022, Defendants successfully negotiated his release in a prisoner exchange.[7]

38. Three years after Congress required Defendants to "expeditiously" make a Levinson Act Determination in the case of every United States national detained abroad, Defendants have made a Levinson Act Determination in the cases of only two of the estimated dozens of Americans currently wrongfully detained in Russia: Paul Whelan and Evan Gershkovich.[8]

39. Paul Whelan was detained by Russian authorities on December 28, 2018. Although the Levinson Act was not yet in effect at that time, Defendants have long considered Mr. Whelan wrongfully detained and have been demanding his release since at least January 2020. Defendants do not make public any official explanation for classifying an individual as wrongfully detained, but they have issued press statements setting forth the reasons why Mr. Whelan's detention by Russian authorities is wrongful or unlawful, including the lack of evidence and of due process at his trial and sentencing, and the cruel conditions of his imprisonment at penal colony IK-17, where Plaintiff is also detained.[9] On June 15, 2020, Mr. Whelan was convicted of espionage and

---

American Grit Podcast, *American Grit Podcast w/ Trevor Reed* (Mar. 24, 2023), available at https://www.youtube.com/watch?v=cqVdNXU1q24 (transcribed from video beginning at 39:03).

[7] Michael D. Shear and Ivan Nechepurenko, *Russia Releases Former U.S. Marine in Prisoner Swap*, N.Y. Times (Apr. 27, 2022), https://www.nytimes.com/2022/04/27/world/europe/trevor-reed-russia-prisoner-swap.html.

[8] *See* Press Statement, U.S. Dep't of State, Russia's Wrongful Detention of Journalist Evan Gershkovich (Apr. 10, 2023), https://www.state.gov/russias-wrongful-detention-of-journalist-evan-gershkovich/.

[9] *See* Press Statement, U.S. Dep't of State, Third Anniversary of Paul Whelan's Detention in Russia (Dec. 28, 2021), https://www.state.gov/third-anniversary-of-paul-whelans-detention-in-russia/ (recognizing that Whelan was "imprisoned and sentenced on false charges"); Press Statement, U.S. Dep't of State, Four Year Anniversary of Paul Whelan's Wrongful Detention in Russia (Dec. 28, 2022), https://www.state.gov/four-year-anniversary-of-paul-whelans-wrongful-detention-in-russia/ (recognizing that he is "suffering through an unfathomable ordeal"); Press Statement, U.S. Dep't of State, Marking Five Years Since Paul Whelan's Wrongful Detention (Dec. 27, 2023), https://www.state.gov/marking-five-years-since-paul-whelans-wrongful-detention/ (recognizing that Whelan and his family have "suffered the consequences of the Russian government's decision to wrongfully detain U.S. citizens," that Russia is "[u]sing people as political pawns," and lamenting that "[a]fter a secret trial behind closed doors, Paul has spent

sentenced to 16 years in prison. As Secretary Blinken told Mr. Whelan on a recent phone call, Defendants are engaged in ongoing, "intensive efforts" to bring him home.[10]

40. Evan Gershkovich was detained by Russian authorities on March 29, 2023, while working as a journalist for the Wall Street Journal in Russia. Only twelve days later, on April 10, 2023, Defendants determined that he had been wrongfully detained under the Levinson Act. He has not yet been tried or sentenced in Russia, but is charged with espionage. Only twelve days after Gershkovich was detained, Defendants had already determined that the charges against him were baseless, and Secretary Blinken "condemn[ed] the Kremlin's continued repression of independent voices in Russia."[11]

41. Defendants' efforts to negotiate Mr. Gershkovich's and Mr. Whelan's release are ongoing, and their release has been denominated a "top priority" for the State Department.[12] Meanwhile, Defendants have never even mentioned Plaintiff's name in a public statement.

### D. Any Review of Plaintiff's Case Will Show That He Is "Unlawfully or Wrongfully Detained" Within the Meaning of the Levinson Act.

42. Even the most cursory review of Plaintiff's circumstances, and certainly the more searching investigation required by the Hostage Act and Levinson Act, reveals a great deal of "credible information that [he is] being detained unlawfully or wrongfully" and there is absolutely

---

years laboring in a Russian penal colony. In the past year alone, he has faced assault from other prisoners and harassment from Russian state-run media.")

[10] Caitlin Yilek, *Blinken speaks with Paul Whelan, American detained in Russia, for third time*, CBS News (Feb. 13, 2024), https://www.cbsnews.com/news/paul-whelan-blinken-phone-call-detained-russia/.

[11] Press Statement, U.S. Dep't of State, Russia's Wrongful Detention of Journalist Evan Gershkovich (Apr. 10, 2023), https://www.state.gov/russias-wrongful-detention-of-journalist-evan-gershkovich/; *see also* Press Release, U.S. Embassy and Consulates in Russia, U.S. Ambassador Tracy's Statement on Wrongfully Detained U.S. Citizen Evan Gershkovich Outside Moscow City Court (Sep. 19, 2023), https://ru.usembassy.gov/u-s-ambassador-tracys-statement-on-wrongfully-detained-u-s-citizen-evan-gershkovich-outside-moscow-city-court/.

[12] Press Release, U.S. Embassy and Consulates in Russia, Ambassador Lynne Tracy's Statement following Evan Gershkovich's court hearing on February 20, 2024 (Feb. 20, 2024), ru.usembassy.gov%2Fambassador-lynne-tracys-statement-following-evan-gershkovichs-court-hearing-on-february-20-2024; *see also* Press Briefing by Matthew Miller, Department Spokesperson, U.S. Dep't of State (Mar. 26, 2024), https://www.state.gov/briefings/department-press-briefing-march-26-2024/.

no justification for Defendants' delay in making a Levinson Act Determination in his case. 22 U.S.C. § 1741(a).

43. The Secretary is required to make a Levinson Act Determination "expeditiously" and "based on criteria which may include whether—

> (1) United States officials receive or possess credible information indicating innocence of the detained individual;
>
> (2) the individual is being detained solely or substantially because he or she is a United States national;
>
> (3) the individual is being detained solely or substantially to influence United States Government policy or to secure economic or political concessions from the United States Government;
>
> (4) the detention appears to be because the individual sought to obtain, exercise, defend, or promote freedom of the press, freedom of religion, or the right to peacefully assemble;
>
> (5) the individual is being detained in violation of the laws of the detaining country;
>
> (6) independent nongovernmental organizations or journalists have raised legitimate questions about the innocence of the detained individual;
>
> (7) the United States mission in the country where the individual is being detained has received credible reports that the detention is a pretext for an illegitimate purpose;
>
> (8) the individual is detained in a country where the Department of State has determined in its annual human rights reports that the judicial system is not independent or impartial, is susceptible to corruption, or is incapable of rendering just verdicts;
>
> (9) the individual is being detained in inhumane conditions;
>
> (10) due process of law has been sufficiently impaired so as to render the detention arbitrary; and
>
> (11) United States diplomatic engagement is likely necessary to secure the release of the detained individual."

22 U.S.C. § 1741(a).

44. Congress made clear that none of these criteria is required, nor is this an exhaustive list of possibly relevant considerations—the Secretary must consider the "totality of the circumstances," 22 U.S.C. § 1741(b)(1), and each criterion "may" or may not be a basis for the determination, 22 U.S.C. § 1741(a). Congress also made clear that a Levinson Act Determination is not a definitive finding that someone is wrongfully or unlawfully detained—it is a finding that there is "credible evidence" suggesting as much or, in other words, a finding that they may be wrongfully or unlawfully detained. 22 U.S.C. § 1741(a), (c)(2)(C). Congress directed the Secretary to act swiftly, and to give a detailed report annually to Congress, regarding the cases of anyone who it determines "may be detained unlawfully or wrongfully." 22 U.S.C. § 1741(c)(2)(C). Plaintiff certainly falls into that broad category, and Defendants had sufficient information to make this determination when the Levinson Act passed.

45. The first criterion strongly supports a finding that Plaintiff is wrongfully or unlawfully detained. Innocence of the crime of conviction is by no means required for an American to be designated unlawfully or wrongfully detained under the Levinson Act, as the text of the statute and Defendants' designation of Brittney Griner as wrongfully detained, despite her confession, make clear. However, Plaintiff is actually innocent of the crimes with which he was charged, and the only crime he did commit was—as in Ms. Griner's case—an accident. Plaintiff was arrested for indecent exposure after an unfortunate incident in which the bathrobe he was wearing to bring garbage to the downstairs of his friend's apartment building unintentionally and momentarily slipped open, as he was reaching out his arm to catch the elevator back upstairs. However, Plaintiff was later charged with and convicted of a number of additional crimes he did not and could not possibly have committed, including crimes against people in cities he had never visited and on dates when his passport clearly showed he was in the United States. He was placed

in a sham lineup with four Russian policeman. The alleged victims had identical, fabricated stories. Plaintiff was coerced into signing a confession written in Russian, denied a translator, and denied numerous rights necessary to ensure a fair trial, including the effective assistance of counsel and the right to have witnesses testify in his defense.

46. Taking into account the second and third criteria, the fact that Plaintiff is an American detained in Russia alone warrants a determination that he is unlawfully or wrongfully detained. Defendants and their representatives have long been aware of and have publicly condemned Russia's "continued pattern of wrongfully detaining U.S. nationals," as a State Department spokesperson described it in April 2023.[13]

47. On April 27, 2023, the State Department designated Russia's Federal Security Service (FSB) for sanctions pursuant to E.O. 14078, finding that the "FSB has repeatedly been involved in the arrest, investigation, and detention of U.S. nationals wrongfully detained in Russia."[14]

48. At a May 2023 hearing of the Senate Committee on Foreign Relations, former Ambassador John Sullivan, who served as ambassador to Russia from 2020 to 2022, made clear that Russia uses wrongful detentions of Americans as a foreign policy tool. Ambassador Sullivan expressed in the strongest terms that the Russian judicial system is a "Potemkin court" used as a tool of the Kremlin to advance its policy interests, including through the practice of "catch[ing]" Americans" to use as pawns in their war against the United States.[15]

---

[13] Press Briefing by Vedant Patel, Principal Deputy Spokesperson, U.S. Dep't of State (Apr. 28, 2023), https://www.state.gov/briefings/department-press-briefing-april-28-2023/.

[14] Press Statement, U.S. Dep't of State, Sanctioning Russian Federation and Iranian State Actors Responsible for the Wrongful Detention of U.S. Nationals (Apr. 27, 2023) https://www.state.gov/sanctioning-russian-federation-and-iranian-state-actors-responsible-for-the-wrongful-detention-of-u-s-nationals/.

[15] *What Comes Next For U.S. Policy Towards Russia?: Hearing Before the Committee on Foreign Relations, U.S. Senate*, 118th Cong. 25 (2023) (statement of Hon. John Sullivan, Former Deputy Secretary of State and Ambassador

49. The State Department's travel advisory for Russia warns Americans not to travel to or remain in Russia due to "the potential for harassment and the singling out of U.S. citizens for detention by Russian government security officials, the arbitrary enforcement of local law," and the fact that "Russian security services have arrested U.S. citizens on spurious charges, singled out U.S. citizens in Russia for detention and harassment, denied them fair and transparent treatment, and convicted them in secret trials or without presenting credible evidence."[16]

50. The sixth criterion also weighs in favor of classifying Plaintiff as wrongfully detained; specifically, journalists have questioned the legitimacy of the charges against Plaintiff. For example, reporter Michael Dorstewitz has reported on Plaintiff's story, describing him as a "political pawn" who did "nothing wrong short of being in the wrong place at the wrong time," and who was "tried and convicted in a closed-door pro-forma proceeding, where everyone was assigned their role and each knew their lines."[17] Journalist Greta Van Susteren has also frequently covered Plaintiff's story and urged for his release, having spoken to him directly.[18] In recent coverage, Van Susteren demanded Plaintiff's release, describing him as "unjustly held" by Russia.[19]

51. The eighth statutory criterion is also clearly met, and warrants a determination that Plaintiff is unlawfully detained, because the State Department's annual human rights reports have

---

of the United States to the Russian Federation), https://www.congress.gov/118/chrg/CHRG-118shrg53280/CHRG-118shrg53280.pdf; video available at https://www.foreign.senate.gov/hearings/what-comes-next-for-us-policy-towards-russia (statement beginning at 144:15).

[16] U.S. Dep't of State, Russia Travel Advisory (last updated September 5, 2023) https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/russia-travel-advisory.html. The State Department also marks Russia with a "D" designation on its travel advisory, which warns Americans not to travel to countries based on a risk of wrongful detentions, in the same way a "T" designation warns of terrorism. *Id*.

[17] Michael Dorstewitz, *Opinion: To Honor 9/11, Free US Political Pawns Rotting in Russian Gulags*, Newsmax (Sep. 11, 2023), https://www.newsmax.com/michaeldorstewitz/russia-911/2023/09/11/id/1133984/.

[18] *See* Free Jimmy Wilgus, Media, https://www.freejimmywilgus.com/media (last visited Apr. 1, 2024).

[19] Free Jimmy Wilgus, Media, https://www.freejimmywilgus.com/media (last visited Apr. 1, 2024) (second video); *see also* Brett Forrest, *Some Americans Jailed in Russia Fear Being Left Behind*, Wall Street Journal (Oct. 4, 2023), https://www.wsj.com/world/russia/some-americans-jailed-in-russia-fear-being-left-behind-483cf3ff.

concluded that Russia's judiciary is neither independent nor impartial, and its legal processes are corrupt and unjust in numerous ways, including being incapable of rendering just results. For example, the 2022 annual report found that "executive interference with the judiciary and judicial corruption undermined [the] right" to a fair and public trial in Russia; corruption "continued to be rampant" throughout the judicial system; "judges remained subject to influence from the executive branch, the armed forces, and other security forces, particularly in high-profile or politically sensitive cases, as well as to corruption"; and "[t]he outcomes of some trials appeared predetermined."[20] Earlier reports made nearly identical findings.[21]

52. The ninth criterion also warrants a finding that Plaintiff is unlawfully and wrongfully detained because the conditions under which he is being held are inhumane, as they have been since the outset of his detention.[22] Indeed, Plaintiff's most fundamental human rights are violated on a daily basis. The cruel and often torturous conditions of punishment in Russia's prisons and labor camps are widely reported, including in the State Department's own Human Rights Report on Russia.[23] Consistent with Plaintiff's experience, the State Department describes conditions in Russian prisons and penal colonies to be "harsh and life threatening," with unsanitary conditions, "systemic" physical and sexual abuse by prison guards, and reports of prison

[20] U.S. Dep't of State, Russia 2022 Human Rights Report 14–15, 49, https://www.state.gov/wp-content/uploads/2023/03/415610_RUSSIA-2022-HUMAN-RIGHTS-REPORT.pdf.

[21] *See, e.g.,* U.S. Dep't of State, Russia 2022 Human Rights Report 14–15, 49, https://www.state.gov/wp-content/uploads/2019/01/Russia-1.pdf.

[22] ***See*** Brett Forrest, ***Russia's Grim 'Fashion Colony': Americans Describe Harsh Life in Remote Labor Camp,*** Wall Street Journal (Jun. 18, 2023), https://www.wsj.com/articles/russias-grim-fashion-colony-americans-describe-harsh-life-in-remote-labor-camp-9324bb80.

[23] ***See, e.g.***, Pjotr Sauer, *IK-2 Mordovia: the harsh, notorious penal colony holding Brittney Griner*, The Guardian (Nov. 18, 2022); Brett Forrest, *Russia's Grim 'Fashion Colony': Americans Describe Harsh Life in Remote Labor Camp*, Wall Street Journal (Jun. 18, 2023), https://www.wsj.com/articles/russias-grim-fashion-colony-americans-describe-harsh-life-in-remote-labor-camp-9324bb80 (describing Plaintiff's conditions at IK-17); U.S. Dep't of State, Russia 2022 Human Rights Report 8–11, https://www.state.gov/wp-content/uploads/2023/03/415610_RUSSIA-2022-HUMAN-RIGHTS-REPORT.pdf.

authorities "systematically tortur[ing] inmates."[24] These conditions are designed to break the human spirit.[25]

53. Penal colony IK-17, in particular, is part of a "sprawling network of penal colonies" located deep in the forest in Mordovia, 300 miles from Moscow.[26] A sociologist who studies Russian prison conditions reports that "[p]risons in Mordovia are notoriously terrible, even by Russian standards";[27] they are labor camps, "built in the early 1930s as part of the gulag system of the Stalin era," and they are governed by a "brutally imposed caste system[]" of criminal inmates and prison guards.[28]

54. Like other prisoners at penal colonies in Mordovia, Plaintiff is awakened each day at 5:00 a.m., forced to stand outside—often in freezing temperatures—for roll call which can take up to an hour, and then required to work from 7:00 a.m. until 4:00 p.m., at least six days a week, in a clothing factory. There, 280 prisoners work in four assembly lines who produce jackets and pants for commercial sale, all in hazardous conditions. Plaintiff's particular job in the assembly line is to cut stray threads off of the clothing with a small knife; in doing so, he frequently cuts himself. As well, the factory is piled with clothing scraps which contain toxic fibers that pollute the air and are absorbed through Plaintiff's skin upon handling the clothing. The scraps of this toxic fiber are supposed to be shipped to a safe disposal site but, to save costs, the prison authorities

---

[24] U.S. Dep't of State, Russia 2022 Human Rights Report 4, 8–11, https://www.state.gov/wp-content/uploads/2023/03/415610_RUSSIA-2022-HUMAN-RIGHTS-REPORT.pdf.

[25] Cristina Maza, *Russia Explained: Putin's Prisons a Vortex of Cruelty and Anguish*, Center for European Policy Analysis (Mar. 9, 2021), https://cepa.org/article/russia-explained-putins-prisons-a-vortex-of-cruelty-and-anguish/.

[26] Pjotr Sauer, *IK-2 Mordovia: the harsh, notorious penal colony holding Brittney Griner*, The Guardian (Nov. 18, 2022), https://www.theguardian.com/world/2022/nov/18/ik-2-mordovia-harsh-notorious-penal-colony-brittney-griner.

[27] *Id*.

[28] Pjotr Sauer, *IK-2 Mordovia: the harsh, notorious penal colony holding Brittney Griner*, The Guardian (Nov. 18, 2022), https://www.theguardian.com/world/2022/nov/18/ik-2-mordovia-harsh-notorious-penal-colony-brittney-griner; Kristaps Andrejsons, *Russia's Convict-Soldiers Have Their Own Brutal Rules*, Foreign Policy (May 16, 2023), https://foreignpolicy.com/2023/05/16/russia-prisons-wagner-group-ukraine-crime-culture/.

instead burn the toxic scraps in an incinerator behind the factory, which billows black smoke that burns prisoners' eyes and throats when a breeze blows.

55. Plaintiff is denied basic hygiene needs like toilet paper, regular showers, and first-aid items including band-aids. Prisoners at IK-17 are only allowed to shower once a week. Their toilet is a community outhouse—a giant hole in the ground. Between the outhouse and the incinerator behind the factory, there is a chicken coop from which the prison's eggs and, formerly, their meat come. The chickens there are missing feathers, eyes, and limbs, and have cancerous-looking growths on their exposed flesh.

56. Plaintiff is subjected to violence by other inmates and prison authorities with impunity. When he is hit by a Russian inmate, as he has been several times, the Russian inmate is not punished at all—instead, Plaintiff is sent to solitary confinement, or "Shizo," where he is locked in a room only as wide as his arm span and forced to stand or sit on a bench for sixteen hours a day.[29]

57. Plaintiff and the other foreign prisoners are regularly sent to Shizo based on fabricated charges, and they are never told how long they will be there—on one occasion, Plaintiff spent a torturous 118 consecutive days in Shizo. There are video cameras throughout IK-17, and prison guards regularly use video footage to fabricate charges of minor infractions—for example, if an inmate blinks while working in the factory, they will take a still shot from the video of the moment the inmate's eyes are closed, and then punish him harshly for sleeping on the job. On December 4, 2020, prison guards created a fake package, purportedly from Plaintiff's wife, Elena, containing narcotics inside of a shampoo bottle. The package was clearly fake because Plaintiff

---

[29] *See* Brett Forrest, *Russia's Grim 'Fashion Colony': Americans Describe Harsh Life in Remote Labor Camp*, Wall Street Journal (Jun. 18, 2023), https://www.wsj.com/articles/russias-grim-fashion-colony-americans-describe-harsh-life-in-remote-labor-camp-9324bb80.

had already received the maximum two care packages from Elena that month, and a Russian lawyer was able to prove this in February 2021. However, throughout the alleged investigation and even after Plaintiff's innocence was proven, he was confined in Shizo for four months.

58. Plaintiff is also denied essential healthcare, both at IK-17, where there are no doctors, and at the prison hospital facility, IK-21, which is supposed to treat serious health issues. For example, Plaintiff suffered a stroke in August 2022, but prison authorities refuse to perform the testing needed to diagnose and treat it. He suffers from chronic headaches and respiratory issues, high blood pressure, and back and shoulder pain, receiving treatment for none of them. He has been diagnosed with osteochondritis of the cervical spine—including irreversible damage to the bones and cartilage in his spine—but the only treatment provided to him have been painkillers. And he has no access to mental health care and no dental care except in very limited circumstances, when paid for by his family. Finally, Plaintiff spends much of his time in fiercely cold weather without sufficiently warm clothing, leaving him even more medically vulnerable.

59. Moreover, the conditions at IK-17 are rapidly deteriorating. In February 2024, the prison authorities physically removed the phones to which prisoners previously had access, allowing Plaintiff only one call a week to his family. Prisoners must now file a written request to use a phone, specifying whom they will call and even then, their call requests can take days to be processed, after which they are sometimes denied. In March 2024, the prison authorities stopped offering meat to the prisoners, further reducing the nutritional value of their meager meals, which are now comprised mostly of potatoes. Moreover, as Russia's war in Ukraine drags on, and its relationship with the United States grows increasingly strained, Plaintiff is subjected to increasing hostility by prison staff because he is American.

60. The tenth criterion compels a finding that Plaintiff is unlawfully and wrongfully detained, as Plaintiff's due process rights have been violated in numerous ways during his criminal proceedings and detention in Russia. Plaintiff was denied his fundamental due process right to a fair trial, and to the essential elements of a fair trial, including rights to the effective assistance of counsel, to a public trial, to be informed of the nature of the charges against him, and to confront the witnesses against him. Plaintiff, who does not read or understand Russian, was coerced into signing a confession written in Russian, and he continues to be forced to sign documents in Russian which he does not understand, or risk serious penalties. He was convicted of false charges, upon the testimony of coached witnesses, in a closed-door trial which neither his wife nor representatives from the United States Embassy in Russia were allowed to attend.

61. In addition, at penal colony IK-17, Plaintiff continues to be subjected to forced labor, false charges, solitary confinement, and other abuses with no recourse to vindicate his legal rights in court. *See Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (recognizing a prisoner's "right of access to the courts" in American law, which is "founded in the Due Process Clause").

62. Finally, the eleventh criterion in the statute also clearly weighs in favor of a determination that Plaintiff is unlawfully detained, because Russia does not currently participate in a prisoner transfer program with the United States, which is the only other way Plaintiff can be freed from his wrongful and inhumane detention. Defendants and their representatives at the Embassy in Moscow have long encouraged Plaintiff to apply for the prison transfer program, which would hypothetically allow him to serve the remainder of his sentence at a prison in the United States. He did so and, in December 2018, the United States Department of Justice approved Plaintiff for a prisoner transfer. However—only after he had applied, and forfeited his right to appeal his conviction in Russia in order to do so—a State Department representative at the

Embassy in Moscow informed him that Russia has not actually engaged in any prison transfer program with the United States since approximately 2007.

**E. Defendants' Failure to Make a Levinson Act Determination Has Caused Plaintiff Harm.**

63. Representatives of the State Department often remind Plaintiff and his advocates that, even if he is designated as wrongfully detained, there is no guarantee he will be released and brought home. This is true: Paul Whelan has been designated wrongfully detained for over three years, but remains at the same labor camp as Plaintiff, despite Defendants' "intensive" efforts to negotiate for his release.[30] However, it is also true that Defendants have successfully negotiated the release of Ms. Griner, Mr. Reed, and many other Americans wrongfully detained abroad—in Russia and elsewhere—in the past few years.

64. The fact that Defendants' negotiations have no guarantee of success does not excuse Defendants' violations of the law, and Defendants fail to recognize the numerous ways in which their delay in making a Levinson Act Determination has caused concrete injury to Plaintiff. In fact, every day that passes in which Defendants have not made a determination harms Plaintiff's health, risks his safety, and diminishes the likelihood of his returning home alive.

65. Specifically, Plaintiff is detained at the same labor camp, IK-17, as Paul Whelan, along with one other American, Thomas Stwalley.[31] Because Defendants have, to date, only made a determination of wrongful detention as to Mr. Whelan, Mr. Whelan receives dramatically different and far better treatment than Plaintiff and Mr. Stwalley by both Defendants and by authorities at the labor camp.

---

[30] Press Statement, U.S. Dep't of State, Marking Five Years Since Paul Whelan's Wrongful Detention (Dec. 27, 2023), https://www.state.gov/marking-five-years-since-paul-whelans-wrongful-detention/.

[31] Mr. Stwalley is serving an 11-year sentence at IK-17 after being convicted of intent to distribute marijuana, which he denies. *See* Brett Forrest, *Russia's Grim 'Fashion Colony': Americans Describe Harsh Life in Remote Labor Camp*, Wall Street Journal (Jun. 18, 2023), https://www.wsj.com/articles/russias-grim-fashion-colony-americans-describe-harsh-life-in-remote-labor-camp-9324bb80.

66. For example, when Defendant Ambassador Tracy has visited IK-17 in the past year, after driving ten hours from Moscow, she has visited Mr. Whelan but refused to visit Plaintiff or Mr. Stwalley. She and other higher-ranking officials—including the former Ambassador, John Sullivan—only met with Mr. Whelan on their visits to IK-17, and sat in the waiting room while they sent a lower-ranking representative to speak to Plaintiff. A State Department representative told Plaintiff's family that the reason for this difference in treatment is that it is "against policy" for the Ambassador to visit with American detainees who have not been designated wrongfully detained under the Levinson Act.[32]

67. The Embassy's lesser concern for Plaintiff, as compared to Mr. Whelan, including the Ambassadors' refusal to visit him, has signaled to the Russian prison authorities and other inmates that Plaintiff is not important to the United States. As a result, Plaintiff and Mr. Stwalley are subjected to even more punitive treatment and conditions. For example, when prison authorities determined that the three American prisoners needed to be removed temporarily from their normal housing unit when the Wagner Group was recruiting at IK-17, they moved Plaintiff and Mr. Stwalley to solitary confinement cells in Shizo, but moved Mr. Whelan to far more humane conditions in the hospital.

68. Defendants' failure to make a Levinson Act Determination as to Plaintiff also prejudices him because it means that most of the private organizations that support wrongfully detained Americans will not assist him or his family. These organizations, in turn, report incomplete information about the crisis of unlawful detentions in Russia.[33]

---

[32] Ambassador Sullivan made one exception to this alleged policy, meeting with Plaintiff on his final visit to IK-17, after refusing to do so several times. However, Plaintiffs' family has been told more recently the Embassy's policy is to visit only those designated wrongfully detained, and Ambassador Tracy has never visited Plaintiff.

[33] *See, e.g.*, James W. Foley Legacy Foundation, *Bringing Americans Home 2023*, https://static1.squarespace.com/static/5b9bff21ee17595f5ae7ca1e/t/64ff5a72536628692ddebd49/1694456441333/Bringing+Americans+Home+2023__Web+2.pdf

69. As stated previously, Defendants' failure to make a Levinson Act Determination with regard to Plaintiff also means that Congress is not duly informed about his circumstances, as required by the Levinson Act's reporting provisions, which means he is not receiving the political attention that is his due and which would increase the likelihood he is returned home. *See* 22 U.S.C. § 1741(b).

70. Most significantly, of course, Defendants' failure to make a Levinson Act Determination means that Plaintiff is not part of the ongoing negotiations between the United States and Russia which would have at least some chance of success in bringing him home, as they did for Brittney Griner and Trevor Reed, as well as dozens of others detained elsewhere abroad in recent years.[34]

71. In sum, Defendants' neglect and unequal treatment of Plaintiff in this manner, and their blatant disregard for the duties imposed on them in the Levinson Act, not only violate the law but are extremely harmful to Plaintiff. They should not be allowed to continue.

## CAUSES OF ACTION

### COUNT ONE

5 U.S.C. § 706(1) – Unlawfully Withheld or Unreasonably Delayed Agency Action
(Against All Defendants)

72. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

73. Under the APA, this Court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

[34] According to analysis by the Foley Foundation, twenty-five Americans wrongfully detained abroad were released between January 1, 2022 and July 31, 2023 alone, at least seventeen of whom were released due to diplomatic engagement by the United States. *Id* at 23–24. According to a State Department press statement issued in December 2023, "the United States has secured the release of more than forty wrongful detainees" since President Biden took office in January 2021. Press Statement, U.S. Dep't of State, Marking Five Years Since Paul Whelan's Wrongful Detention (Dec. 27, 2023), https://www.state.gov/marking-five-years-since-paul-whelans-wrongful-detention/.

74. The APA directs agencies to conclude even the most mundane matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). In both the Hostage Act and the Levinson Act, Congress directed Defendants to act much more quickly in making wrongful detention determinations, by using terms "forthwith" and "expeditiously," and by requiring Defendant Blinken to provide Congress with a written summary of facts "no later than 14 days after" a determination is made. 22 U.S.C. §§ 1732, 1741 (a)–(b).

75. In evaluating a claim of unreasonable delay, courts in this Circuit are guided by the six factors identified in *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984). *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). These factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*TRAC*, 750 F.2d at 80 (quotation marks and citations omitted).

76. As set forth in detail above, the time it has taken Defendants to make a Levinson Act Determination is governed by no rule of reason. For example, Defendants determined that Evan Gershkovich was wrongfully detained only 12 days after his arrest, but they still have not made a determination in Plaintiff's case, more than seven years after his arrest.

77. Congress's command that the Secretary make a determination in Plaintiff's case "expeditiously," and the fact that the delayed decision in Plaintiff's case poses an intolerable risk to his health and welfare, makes this delay even more unreasonable.

**COUNT TWO**

5 U.S.C. § 706(2)(A) – Arbitrary and Capricious Agency Action
(Against All Defendants)

78. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

79. Under the APA, this Court "shall . . . hold unlawful . . . agency action" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)). The term "agency action" is defined to include an agency's "failure to act" as well as its affirmative actions. 5 U.S.C. § 551(13). The APA requires that "agency action must be the product of reasoned decisionmaking," and the decisions it makes must be "logical and rational." *Farrell v. Blinken*, 4 F.4th 124, 137 (D.C. Cir. 2021) (quotation marks omitted). Moreover, this Court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted).

80. Defendants' failure to take the actions required under the Hostage Act and the Levinson Act with regard to Plaintiff is arbitrary, capricious, and an abuse of discretion within the meaning of the APA. As set forth in detail above, Defendants have neglected to act on Plaintiff's behalf while at the same time acting quickly in the cases of other Americans detained in Russia. They have articulated no rational, logical, or reasonable basis for treating similarly situated United States citizens so differently.

**COUNT THREE**

28 U.S.C. § 1361 – Mandamus and Venue Act
(Against All Defendants)

81. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

82. Pursuant to the Mandamus and Venue Act, 28 U.S.C. § 1361, this Court has the power to "compel an officer or employee of the United States, or any agency thereof to perform a duty owed to the plaintiff."

83. Mandamus is warranted when a Plaintiff demonstrates (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

84. Under the Hostage Act, as a United States citizen detained by Russia, Plaintiff has a clear and indisputable right to a meaningful review of the circumstances of his detention, which is necessary to trigger Defendants' other obligations under the Hostage Act, including obligations to demand his release and report to Congress about their efforts to effectuate his release. 22 U.S.C. § 1732; *see Flynn*, 748 F.2d at 1195–96.

85. Similarly, under the Levinson Act, as a United States national detained in Russia, Plaintiff has a clear and indisputable right to a review of his circumstances and a determination of whether "there is credible information that [he is] being detained unlawfully or wrongfully," 22 U.S.C. § 1741(a), which is necessary to trigger Defendants' other time-sensitive obligations under the Levinson Act. *See* 22 U.S.C. §§ 1741, 1741e(2); 8 U.S.C. § 1101(a)(22).

86. The review and determinations required by these Acts are mandatory, and Defendants are violating a clear duty to act on Plaintiff's behalf under both of these laws. Congress

uses the word "shall" to impose mandatory, "discretionless obligations" on executive agencies. *Lopez v. Davis*, 531 U.S. 230, 241 (2001); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty.").

87. No adequate alternative remedy exists. Defendants are required under the Hostage Act and the Levinson Act to review the cases of all American nationals detained abroad, to demand the release of any wrongfully or unlawfully detained, and to report to Congress regarding their efforts, and a request for action by the Plaintiff or his advocates is not necessary to invoke these duties. Nonetheless, Plaintiff and his advocates have frequently communicated with State Department employees at all levels, to no avail.

**COUNT FOUR**

28 U.S.C. §§ 2201(a) – Declaratory Judgment
(Against All Defendants)

88. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

89. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, this Court has power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," and to grant other relief as necessary or proper to such a judgment. 28 U.S.C. §§ 2201, 2202. Such declaratory judgments "have the force and effect of a final judgment." 28 U.S.C. § 2201. "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

90. An "actual controversy" exists between the parties concerning Defendants' obligations pursuant to the Hostage Act and the Levinson Act. *See* 28 U.S.C. § 2201; *Comm. on Oversight & Gov't Reform v. Holder*, 979 F. Supp. 2d 1, 22–23 (D.D.C. 2013).

91. As set forth above, the President and other responsible Defendants in the executive branch have, for more than seven years, failed to "undertake a meaningful inquiry into the circumstances" of Plaintiff's detention as required by the Hostage Act. *Flynn*, 748 F.2d at 1196.

92. As set forth above, the Secretary of State and other responsible Defendants in the State Department have not fulfilled their duties under the Levinson Act with regard to Plaintiff, for more than three years.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. Compelling Defendants to perform their legal duties under the Hostage Act and the Levinson Act, and to make a determination forthwith as to whether "there is credible information that [he is] being detained unlawfully or wrongfully," 22 U.S.C. § 1741(a);

b. Declaring that Defendants have failed to comply with their obligations under the Levinson Act and the APA, with regard to Plaintiff, by failing to make this determination for more than three years;

c. Declaring that Defendants have failed to comply with their obligations under the Hostage Act, with regard to Plaintiff, by failing to undertake a meaningful inquiry into the circumstances of Plaintiff's detention for over seven years;

d. Granting attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2); and

e. Granting further relief as this Court may deem just and proper.

Dated: May 13, 2024

Respectfully submitted,

**GIBBONS P.C.**

By: /s/ Caroline E. Oks, Esq.
Caroline E. Oks, Esq. (D.D.C. Bar No. 1045607)
500 North Capitol Street NW, Suite 310
Washington, DC 20001
(202) 655-2760
coks@gibbonslaw.com

Lawrence S. Lustberg, Esq.*
Ruth O'Herron, Esq.*
One Gateway Center
Newark, NJ 07102
(973) 596-4500
llustberg@gibbonslaw.com
roherron@gibbonslaw.com

*Attorneys for Plaintiff James Vincent Wilgus*

**Motion for permission to appear* pro hac vice *forthcoming*